UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
                                              :

CENTURY SURETY COMPANY,          :
                           Plaintiff,    :
                                     :          12 Civ. 5540 (JPO)
              -v-                  :
                                     :         <u>OPINION AND ORDER</u>
RICHARD MARZEC, et al.,         :
                        Defendants.  :
                                     :
----------------------------------------------------------- X

J. PAUL OETKEN, District Judge:

      Plaintiff Century Surety Company ("Century") brings this action, pursuant to 28 U.S.C

§ 1332(a)(1), against Defendants Richard Marzec ("Marzec"), Garsch Garage Corporation

("Garsch"), Ionel Susanu ("Susanu"), and Richard Roe ("Roe").  Century seeks a declaration that

it has no duty to defend or indemnify Garsch or Susanu for any claims arising out of the

underlying incident, including an underlying action against them in state court.  Century also

seeks a judgment against Garsch and Susanu in the amount of the defense costs Century has

since incurred defending the Marzec action in state court.

      Before the Court is Garsch's motion for judgment on the pleadings, as well as Century's

cross-motion for summary judgment.  For the reasons that follow, Garsch's motion is granted,

Century's motion is denied, and the case is dismissed.

## I.    Background

      Defendant Garsch operates a parking garage in which Defendant Susanu works, parking,

retrieving, and moving cars as necessary.  (Memorandum of Law in Support of Motion for

Judgment on the Pleadings, Dkt. No. 13 ("Def.'s Mem."), at 2.)   In March 2011, Defendant

Marzec filed a personal injury lawsuit in the Supreme Court of New York County against Garsch

and John Doe—later identified as Susanu—alleging that Marzec suffered injuries in January 2010, when he was struck by a vehicle owned by Defendant Roe, and operated by Susanu, while inside the Garsch garage.  (Memorandum of Law in Support of Cross-Motion, Dkt. No. 21 ("Pl.'s Mem."), at 2.)

Prior to this incident, in September 2009, Garsch applied for insurance coverage for its parking garage, which was to be effective from October 10, 2009 through October 10, 2010. (Affidavit of Michael F. Perley, Dkt. No. 20 ("Perley Aff."), Ex. E-3.  Century asserts that as a result of the Commercial Operations Application that was completed by Garsch, in which Garsch detailed its operations and agreed to be bound by the terms of the policy, it issued a Commercial Lines Policy ("the Policy") to Garsch.  (*Id.*, Ex. G.)  The Policy contained several endorsements, including Endorsement CA00 05 10 01, constituting a Garage Coverage Form extending to "bodily injury and property damage" caused by "covered" automobiles, meaning that "[Century] will pay all sums an insured legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies."  (*Id.* at CA 00 05 10 01, II.A.1.a.)  Both Garsch and Century agree that "[b]y operation of coverage form declaration CHE 1900 1203 the Porsche Cayenne SUV owned by Roe is a 'covered auto[,]'" as defined by the Policy.  (Complaint, Dkt. No. 1, ("Compl."), at ¶ 22; Answer, Dkt. No. 7 ("Ans."), at ¶ 22.)

The Policy also contained various exclusions, including the so-called "Named Driver Exclusion," reflected in Endorsement CAG 1906 1203.  (Declaration of Lloyd M. Eisenberg, Dkt. No. 12 ("Eisenberg Decl."), Ex. C.)  This Named Driver Exclusion ("the Exclusion"), the construction of which is focus of the instant suit, reads as follows:

Schedule
Driver Name
ALL EMPLOYEES EXCEPT FOR:
JACK SCHWARTZ
FLORIN SAUV
HORIA CRISTAN
A. The following is added to B. Exclusions under
    SECTION. II - LIABILITY COVERAGE, and to
    Exclusions under UNINSURED MOTORISTS
    COVERAGE, UNDERINSURED MOTORISTS
    COVERAGE, PERSONAL INJURY PROTECTION or
    MEDICAL PAYMENTS COVERAGE, if coverage is
    provided:
This insurance does not apply to "bodily injury", "property
damage" or medical payments while a covered "auto" is
driven by any individual shown in the schedule above.

(*Id.*)  Garsch disputes that this Exclusion was intended to be a part of its policy, alleging that

Century "included no such endorsement in any policy issued to Garsch before or after the policy

here at issue."  (Ans. at ¶ 42.)

## II.    Legal Standard

Garsch has moved for judgment on the pleadings pursuant to Federal Rule of Civil

Procedure 12(c), requesting that the Court dismiss the Complaint and enter judgment on

Garsch's counterclaim against Century.  In turn, Century has cross-moved for summary

judgment, pursuant to Rule 56(a), seeking a declaration that the underlying incident is not

covered by the explicit terms of the Policy and its Exclusion, meaning that Century has no

obligation to defend Garsch, or Susanu, or Roe for any and all actions for damages in relation to

this incident.

### A.    Judgment on the Pleadings

"The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the

same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim."  *Cleveland v.*

*Caplaw Enters*., 448 F.3d 518, 521 (2d Cir. 2006) (citation omitted).  This means that when

3

examining a Rule 12(c) motion, "the Court must accept as true the non-movant's allegations and draw all reasonable inferences in the nonmovant's favor." *Admiral Ins. Co. v. Adges*, No. 11 Civ. 8289 (JPO), 2012 WL 2426541, at *1 (S.D.N.Y. June 27, 2012) (citations omitted). In doing so, a Court may review only the pleadings, any documents that are attached thereto, incorporated by reference, or those "integral" to the allegations, together with any facts of which a Court may take judicial notice. *See, e.g.*, *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

> **B.   Summary Judgment**

The standard for summary judgment is different, as it contemplates the submission of evidence and interpretation of a given case's record. "Pursuant to Federal Rule of Civil Procedure 56, summary judgment 'is appropriate when the evidence shows that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law.'" *Borghese Trademarks, Inc. v. Borghese*, No. 10 Civ. 5552 (JPO), 2013 WL 143807, at *6 (S.D.N.Y. Jan. 14, 2013) (citation omitted). When reviewing a motion for summary judgment, the Court must take all facts in the light most favorable to the non-movant. *Brod v. Omya, Inc.,* 653 F.3d 156, 164 (2d Cir. 2011). Nevertheless, the non-movant may not simply rely on conclusory statements, and must instead present "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quotations omitted); *see also Kulak v. City of New York*, 88 F.3d 63, 70-71 (2d Cir. 1996). If the evidence presented "is such that a reasonable jury could return a verdict for the nonmoving party," the issue of fact is said to be "genuine." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); in turn, it is considered "material" if it "might affect the outcome of the suit under the governing law." *Id.* A court may grant a motion for summary judgment "when no reasonable trier of fact could find in

favor of the nonmoving party." *White v. ABCO Engineering Corp.*, 221 F.3d 293, 300 (2d Cir. 2000) (quotations and citation omitted); *accord Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

## III.   Discussion

### A.      Contract Interpretation

As both Century and Garsch agree that the underlying incident involved a "covered automobile," as defined under the Policy, Century's duty to indemnify or defend turns on the Court's interpretation of the Named Driver Exclusion, quoted above.

"Under New York law, an insurance policy must be interpreted so that a clear and unambiguous provision is given its plain and ordinary meaning." *U.S. Underwriters Ins. Co. v. Tauber*, 604 F. Supp. 2d 521, 527 (E.D.N.Y. 2009) (citing *Parks Real Estate Purchasing Group v. St. Paul Fire and Marine Ins. Co.*, 472 F.3d 33, 42 (2d Cir. 2006)); *accord Herald Square Loft Corp. v. Merrimack Mut. Fire Ins. Co.*, 344 F. Supp. 2d 915, 918 (S.D.N.Y. 2004) (Chin, J.) ("Insurance policies are read 'in light of 'common speech' and the reasonable expectations of a businessperson.'" (citations omitted)).  Whether a contractual term is ambiguous is for the court to decide as a matter of law. *Tauber*, 605 F. Supp. 2d at 527.  And while insurers may invoke policy exclusions relieving them of a specified duty to defend or indemnify, such exclusions must be "in clear and unmistakable" language. *Seaboard Sur. Co. v. Gillette Co.*, 64 N.Y.2d 304, 311 (Ct. App. 1984) (citations omitted).  In other words, "[a]ny such exclusions or exceptions from policy coverage must be specific and clear in order to be enforced.  They are not to be extended by interpretation or implication, but are to be accorded a strict and narrow construction." *Id.* (citations omitted).  Moreover, it is the insurer's burden to prove that a given claim "falls within the exclusions of an insurance policy." *Neuwirth v. Blue Cross & Blue Shield*

*of Greater New York*, 62 N.Y.2d 718, 718 (Ct. App. 1984).  At bottom, an insurance company

seeking application of an exclusion must show not only that the exclusion is stated clearly, but

also that it "is subject to no other reasonable interpretation, and applies in the particular case."

*Cont'l Cas. Co. v. Rapid-American Corp.*, 80 N.Y.2d 640, 652 (Ct. App. 1993) (citations

omitted).

   As a policy matter, exclusions are given "strict and narrow construction," *Herald

Square*, 344 F. Supp. 2d at 919 (quotations omitted), as the duties to defend and indemnify are

historically broad, *cf. Ruder & Finn v. Seaboard Sur. Co.*, 52 N.Y.2d 663, 669 (Ct. App. 1981).

Given this underlying public policy, all ambiguities are resolved in favor of the insured.  *Herald

Square*, 344 F. Supp. 2d at 919.  Nevertheless, if the insurer is unambiguously "excepted from

coverage," summary judgment in favor of the insurer is appropriate.  *See B.U.D. Sheetmetal v.

Mass. Bay Ins. Co.*, 248 A.D.2d 856, 857 (3d Dep't 1998) (citation omitted).

   **B.      Application of Law to Facts**

   Century and Garsch each assert that the plain language of the Named Driver Exclusion

supports its respective interpretation of the Policy, with Century contending that the Exclusion

applies, and Garsch arguing the opposite.

   As discussed, the Exclusion purports to apply to "bodily injury," "property damage," or

"medical payments" associated with all incidents in which a covered automobile is driven by

"any individual shown in the schedule above."  (Eisenberg Decl., Ex. C.)  Century asserts that, as

the Garage Coverage Form's Exclusion schedule refers to "All Employees," the logical

imperative of the language is that *all* of Garsch's employees are excluded from coverage save the

three named individuals—i.e., that only those three employees are covered.   By contrast, Garsch

contends that the Exclusion states just the opposite: that is, as the Exclusion refers to "a covered

'auto' [] driven by any *individual* shown in the schedule above," the only individuals excluded from the Policy's protection are the three named persons—Jack Schwartz, Florin Sauv, and Horia Crisan.  (*Id.* (emphasis added).)  According to Garsch, Century's interpretation "turn[s] the Named Driver Exclusion on its head," because the Exclusion "simply does not state that coverage applies only to the individuals named on its schedule . . . ."  (Def.'s Mem. at 4.) Garsch asserts that Century's interpretation is arrived at through a series of "linguistic gymnastics" (*id.*), whereas Century argues that "it is clear that the endorsement was intended to exclude coverage under the Garage Policy when a vehicle is driven by *any* employee of Garsch *except* for the three specifically named employees."  (Pl.'s Mem. at 5 (emphasis added).)  The Court agrees with Garsch that the plain language of the Exclusion supports coverage of this accident under the Policy.

First, the Exclusion's Schedule is listed under the phrase "Garage Coverage Form." Accordingly, even before examining the specific language of the Exclusion, the coverage baseline is that "*all* employees" are covered by the Policy "*except for*: Jack Schwartz, Florin Sauv, [and] Horia Crisan."  (Eisenberg Decl., Ex. C (emphasis added).)  Second, the Exclusion states that the Policy does "*not* apply" to "any *individual* shown in the schedule above."  (*Id.* (emphasis added).)  Unambiguously, there are only *three* individuals listed in the applicable Schedule.  No reasonable interpretation of this Exclusion could suggest that the phrase "all employees" constitutes the listing of a single individual.  Century asserts that "[b]y setting forth the drivers in this manner, it is clear that the endorsement was intended to exclude coverage under the Garage Policy when a vehicle is driven by any employee of Garsch except for the three specifically named employees."  (Pl.'s Mem. at 5.)  This interpretation is belied by common sense and does not reflect the better reading of the policy's plain language.  It is indeed true that

7

"[t]he parties' intent must be 'ascertained by examining the policy as a whole, and by giving effect and meaning to every term of the policy.'" *N. Am. Foreign Trading Corp. v. Mitsui Sumitomo Ins. USA, Inc.*, 499 F. Supp. 2d 361, 373-74 (S.D.N.Y. 2007) (quoting *Oot v. Home Ins. Co. of In.*, 244 A.D.2d 62, 676 N.Y.S.2d 715, 717 (4th Dep't 1998) (footnote omitted)). Contrary to Century's assertion, however, Garsch's interpretation does not "fail[] to give effect to every term used in the endorsement, including the schedule" (Pl.'s Mem. at 6), but rather logically applies the terms of the contract as written. Put another way, the unambiguous language of Part A of the Exclusion states that the insurance fails to apply to any *individual* listed in the above Schedule; accordingly, to read the Exclusion as applying to the three *individuals* listed in the Schedule—and no one else—is simply to give effect to the Policy as written.

Here, both Century and Garsch agree that Susanu was driving a covered automobile when Marzec suffered his alleged injuries. Moreover, both Century and Garsch agree that Susanu is not listed as one of the individuals in the applicable Schedule. Therefore, the most logical reading of the Policy is that since Susanu is not a named individual within the Schedule, the Policy's coverage applies to him. To read the Named Driver Exclusion as precluding coverage for *all* employees except the listed three is to read Part A, which excludes "any individual" listed in the Schedule, out of the contract—an impermissible result. *See U.S. Underwriters Ins. Co. v. Affordable Hous. Found., Inc.*, 256 F. Supp. 2d 176, 181 (S.D.N.Y. 2003) *aff'd*, 88 F. App'x 441 (2d Cir. 2004) ("When construing the terms of an insurance contract, an interpretation that gives a reasonable and effective meaning to all terms of a contract is preferable to one that leaves a portion of the writing useless or inexplicable. Courts must therefore avoid construing conflicting provisions and ambiguities within a policy in such a manner as to negate certain coverages, or in

8

ways that render coverage provisions mere surplusage." (citations omitted)).  Moreover, whereas Garsch's reading reflects a logical cohesiveness among the various terms of the Policy and its Exclusion, Century's approach is at odds with the Court's "[r]easonable effort . . . to harmonize all of the terms of the contract."  *N. Am. Foreign Trading Corp.*, 499 F. Supp. 2d at 374 (quotations and footnote omitted).

Here, the plain language of the contract, together with the public policy aim of *contra proferentem*, mandate that the Exclusion be construed as inapplicable to Susanu, as he is not one of the named individuals explicitly excluded from coverage within the applicable Schedule.  *See, e.g.*, *Affordable Hous.*, 256 F. Supp. 2d at 180 ("Under the principle of *contra proferentem,* if there is any ambiguity in the policy it must be construed in favor of the insured, particularly where the ambiguity surrounds exclusionary clauses." (citations omitted)).  Accordingly, Century is required to defend and indemnify, as set out by the terms of the Policy, for those covered harms associated with the underlying incident and lawsuit brought by Marzec in state court.

**IV.      Conclusion**

For the foregoing reasons, Garsch's motion for judgment on the pleadings is GRANTED and Century's motion for summary judgment is DENIED.

The Clerk of Court is directed to close the motions at docket entry numbers 11 and 19. Moreover, as the suit sought a declaration of non-coverage, together with costs incurred in the underlying lawsuit, and the Court has instead determined that coverage is required, any claims against the other Defendants are moot; accordingly, the Clerk of Court is directed to close the case.


SO ORDERED.

Dated:  New York, New York
        July 30, 2013

_____
                J. PAUL OETKEN
          United States District Judge

10